## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No.: 1:20-cv-1144

| | |
|---|---|
| BECTON, DICKINSON AND COMPANY,<br><br>               Plaintiff,<br><br>vs.<br><br>OMNICELL, INC.; JOHN DOES 1-10 (names being fictitious for individuals who are unknown); ABC ENTITIES 1-10 (names being fictitious for corporate or legal entities who are unknown),<br><br>               Defendants. | **COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff, Becton, Dickinson and Company ("BD") files this Complaint against defendant Omnicell, Inc. ("Omnicell") and in support thereof avers as follows:

### SUMMARY OF ACTION

1.      This is a civil action by Plaintiff, BD, arising out of unfair competition and the misappropriation of BD's property, including confidential, proprietary, and trade secret information, by Omnicell.

2.      This lawsuit arises from the misappropriation of BD's confidential pricing information, confidential intelligence information regarding BD's competitors, BD's plans for innovation regarding its Medication Management Solutions' products, and BD's internal plans to address customer needs during the COVID-19 pandemic, by Omnicell

after its employee, Teresa Call ("Call") (a former BD employee), took BD's information for the benefit of Omnicell and to place Omnicell at a competitive advantage over BD.

3. In January 2020, Call began working for Omnicell in North Carolina in a Customer Success Executive position that included both operations and sales functions. As an employee of Omnicell, Call was Omnicell's agent.

4. Following her commencement of employment with Omnicell in North Carolina and despite no longer being employed by BD, from the period between January 22, 2020 and July 28, 2020, Call, as an agent of Omnicell, accessed BD's SalesForce.com platform on at least eighteen (18) occasions and downloaded from the platform approximately 120 BD files. SalesForce.com is an outside vendor of BD that provides BD with a platform so that BD employees can access BD files and information in order to fulfill their employment duties.

5. Following her download of the BD files, Call disclosed BD files and information contained therein to various employees at Omnicell, and she also stored BD files and information on Omnicell's computer network.

6. Upon information and belief, aware of Call's prior employment with BD, on certain occasions Call's colleagues at Omnicell requested that Call provide information to Omnicell, and Call responded from North Carolina by providing Omnicell with BD's trade secrets and confidential information.

2

7.     As one example, ***while employed by Omnicell***, Call downloaded BD's Launch Content Packs, which are internal BD documents containing BD trade secret information – namely pricing and confidential competitive intelligence information – respecting technology about to be launched for various BD products.  Upon information and belief, Omnicell now possesses BD's Launch Content Packs and the trade secret information contained within those files.

8.     A substantial amount of the trade secrets were developed by BD ***after*** Call resigned from BD and commenced employment with Omnicell.  Upon information and belief, all of the information transferred to Omnicell occurred while Call was employed by Omnicell in North Carolina.

9.     BD's confidential information and trade secrets were misappropriated by Omnicell.  This occurred each time that:

a.     Call, as an agent of Omnicell, accessed and downloaded same while in Omnicell's employ;

b.     Call disseminated such information to others at Omnicell, or

c.     Call or such other Omnicell recipients—or anyone else at Omnicell with access to BD's information—used such information in any manner.

10.     Omnicell's acquisition and possession of BD's trade secret information placed Omnicell in a position to use such information to its benefit and the detriment of BD.

4817-3697-7620 v.1 003628/01502

## JURISDICTION AND VENUE

11.     Jurisdiction is based on 28 U.S.C. § 1331 and BD's claims under 18 U.S.C. 1836(b), for misappropriation of trade secrets under the Defend Trade Secrets Act of 2016.

12.     Jurisdiction is also based upon 28 U.S.C. § 1332(a)(2) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

13.     This Court has supplemental jurisdiction pursuant to 28 U.S.C § 1367 of all other claims that do not arise under the Constitution, laws, or treaties of the United States.

14.     Venue is proper within this district based on 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claims occurred within this district.

## PARTIES

15.     BD is a corporation duly organized under the laws of the State of New Jersey, and maintains its principal place of business at One Becton Drive, Franklin Lakes, New Jersey 07417.  Thus, BD is a citizen of New Jersey.

16.     BD maintains several offices in North Carolina, including office locations in this District, i.e., in Burlington, Durham, and Mebane, as well as in Four Oaks.

17.     BD is a global medical technology company that serves healthcare institutions, life science researchers, clinical laboratories, the pharmaceutical industry and the general public.

4817-3697-7620 v.1 003628/01502

18.     BD manufactures and sells a broad range of medical supplies, devices, laboratory equipment, and diagnostic products, including multiple products that have been developed to combat the current Coronavirus pandemic.  BD has offices in approximately 50 countries worldwide.

19.     Omnicell is a corporation organized under the laws of the State of California and maintains its principal place of business at 590 E. Middlefield Road, Mountain View, California 94043.

20.     Omnicell also maintains an office located at 11125 Forest Pines Drive, Raleigh, North Carolina 27614.  Call, while engaging in the acts described herein on behalf of and for the benefit of Omnicell, worked and resided in Guilford County, North Carolina.

## GENERAL ALLEGATIONS

### BD's Services And Relevant Trade Secrets

21.     BD is among the world's leading suppliers of medical devices and a leading innovator in injection and infusion-based drug delivery since 1906, when the Company built the first-ever facility in the U.S. to manufacture needles and syringes.

22.     BD is focused on improving drug delivery, enhancing the quality and speed of diagnosing infectious diseases and cancers, and advancing research, discovery and production of new drugs and vaccines.

23.     BD's capabilities are instrumental in combating many of the world's most pressing diseases.

4817-3697-7620 v.1 003628/01502

24.     Founded in 1897 and headquartered in Franklin Lakes, New Jersey, BD employs approximately 65,000 associates in approximately 50 countries throughout the world.

25.     Through its BD Medical segment, and more specifically its Medication Management Solutions ("MMS") business, BD provides Medication Management technology serving acute care hospitals, non-acute care facilities, and retail pharmacies, including but not limited to, infusion pumps and other automated medication dispensing systems.

26.     Through the MMS business, BD also provides logistics software to acute and non-acute care hospitals that help track medications, simplify workflows, improve productivity and reduce medication cost and waste.

27.     Included within the MMS business is the BD Pyxis™, which is a portfolio of products that provides medication and supply management throughout a hospital or hospital groups.  In addition to enhancing medication safety and patient care, the BD Pyxis™ allows hospitals or hospital groups to streamline workflow, improve financial performance and facilitate regulatory compliance.

28.     As one example of a product within the BD Pyxis™ portfolio, the BD Pyxis™ MedStation™ ES is an automated medication dispensing system that supports decentralized medication management by helping clinicians to safely and efficiently

6

dispense the right medications, for the right patients at the right time. The BD Pyxis™ ES platform offers enterprise-wise medication management.

29. Also within the BD Pyxis™ portfolio, the BD Pyxis™ ES Refrigerator is a medical grade refrigerator that provides integrated and secure access to high-risk and high-value refrigerated medications. It is an integrated temperature management and refrigeration solution designed to help prevent medication errors, support clinical workflow efficiency, and reduce waste.

30. Within the MMS business, BD recently brought to the market analytics software that allows hospitals and hospital systems the ability to optimize their inventory within the BD Pyxis™ portfolio.

31. Specifically, the analytics software enables hospitals and hospital systems to utilize a single platform that provides a unified, enterprise-wide medication management system while maintaining a centralized location to manage data across the system, which in turn, supports consistent practices.

32. Within the BD Pyxis™ portfolio, the BD Pyxis™ Enterprise Server provides hospitals and health systems a scalable, flexible foundation for managing Pyxis ES technologies on a single database. The BD Pyxis™ Enterprise Server enables data sharing between Pyxis™ ES platform technologies.

33. Within the BD Pyxis™ portfolio, the Pyxis™ CII Safe® system is an application system that stores, tracks, and monitors the replenishment of controlled

7

substances within a hospital setting. The Pyxis™ CII Safe® system integrates with other BD Pyxis™ systems, such as the BD Pyxis™ MedStation™ ES to provide a seamless, facility-wide management of controlled substances.

34. Also within the BD Pyxis™ portfolio, the Pyxis™ IV Prep is a guided, gravimetrics-based IV workflow management system (IVWMS) designed to support a hospital pharmacy's compounding operations for all preparation types, including IVs, hazardous and nonhazardous preps, sterile and nonsterile preps, and oral syringes.

35. BD Pyxis™ Track & Deliver is used to deliver patient-specific medications such as inhalers, eye drops, and ointments, as well as IV bags that are compounded manually or using BD Pyxis™ IV Prep.

36. BD Pyxis™ Logistics is a medication inventory management solution software that helps track medications, simplify workflows, improve productivity and reduce medication cost and waste. This solution provides visibility into all medication storage areas, enabling integrated medication management across a hospital system.

37. BD Remote Assist is a web-based portal that provides users with the ability to remotely access BD Pyxis™ devices to support nurses and troubleshoot issues. The portal supports the remote access needs of customers for various products, including the BD Pyxis™ MedStation ES and BD Pyxis™ CII Safe.

38. BD treats its pricing, sales opportunities, names of customer contacts, competitive intelligence, and innovations within its BD Pyxis™ portfolio as trade secrets.

4817-3697-7620 v.1 003628/01502

39.    The BD Alaris™ is another platform within the BD's MMS business.  The BD Alaris™ includes infusion systems, infusion software, infusion system therapies, and IV therapy sets and accessories.  The BD Alaris™ System supports a range of specialties, including: (a) oncology; (b) pain management; critical care/ICU; (c) medical/surgical; and (d) outpatient.

40.    The BD Alaris™ EMR Interoperability is software that integrates medication infusion through an infusion pump with an Electronic Medical Record ("EMR").  The technology reduces the potential for medication errors caused by manually programming an infusion pump.

41.    BD treats its pricing, sales opportunities, names of customer contacts, competitive intelligence, and innovations within its BD Alaris™ portfolio as trade secrets.

42.    Also in connection with BD's MMS business, in 2017, BD launched the BD HealthSight™ platform for enterprise medication management, which is a hosted, cloud-based portal providing a single platform.  BD HealthSight™ Data Manager is a hosted, cloud-based solution that provides a single platform to normalize medication data across BD Pyxis ES™ System and BD Pyxis™ Logistics to enable analytics and benchmarking and aims to simplify formulary maintenance.

43.    The BD HealthSight™ platform works to: (i) normalize medication data to enable comparative analytics; (ii) manage drug standards at an enterprise level to ensure

4817-3697-7620 v.1 003628/01502

consistency and formulary compliance; and (iii) centralize management of device formularies, reducing risk of error associated with manual entry.

44. BD treats its pricing, sales opportunities, names of customer contacts, competitive intelligence, and innovations within its BD HealthSight™ platform as trade secrets.

45. In addition, for the past nine months, BD and its associates have been focused on helping medical providers around the world combat the Coronavirus pandemic. In addition to producing needles for vaccine delivery, specimen collection kits, and infusion pumps for medication delivery, BD has developed a portable, 15-minute rapid detection system – the BD Veritor™ System – for the detection of the SARS-CoV-2 antigen.

46. BD developed the following trade secrets that, upon information and belief, Call, while employed at Omnicell, improperly took from BD and that Omnicell has acquired:

     a.    market analytics software that allows hospitals and hospital systems the ability to optimize their inventory;

     b.    Launch Content Packs, which contain BD's trade secret information relating to pricing and confidential competitive intelligence information respecting technology about to be launched for various MMS products;

     c.    pricing information for the MMS business;

4817-3697-7620 v.1 003628/01502

d. BD's confidential business plans in responding to the COVID-19 pandemic;

e. competitive intelligence relating to competitive information of products in the same market as the MMS business;

f. customer contact information; and

g. BD's innovations and improvements for its MMS products.

47. BD's trade secrets constitute valuable and confidential information that can be used individually or in combination to sell competing products, giving competitors like Omnicell an unfair advantage in selling their own products.

48. The confidential files acquired and possessed by Omnicell contain BD's trade secrets and are identified in Paragraphs 141 and 147 through 159 of this Complaint.

49. Many of the files are marked by BD as confidential and not external for distribution.

50. BD's trade secrets were developed by BD in the course of its business at significant time, effort, and expense, and BD invests significant additional time, effort, and expense to keep this information secret.

51. BD's confidential and proprietary information and trade secrets contained in the files and information in the possession of Omnicell is not generally known outside of BD.

4817-3697-7620 v.1 003628/01502

52.     BD's competitive position rests on continually enhancing its products and keeping its pricing information confidential in a highly competitive field.

## BD's Merger With CareFusion

53.     On or about March 17, 2015, BD completed its acquisition of CareFusion Corporation ("CareFusion") pursuant to the terms of its previously announced Agreement and Plan of Merger.

54.     Pursuant to the acquisition, CareFusion became a wholly owned subsidiary of BD, and therefore, BD welcomed CareFusion's products into the BD family of products.

55.     As a result, many of CareFusion's infusion and dispensing-based products formed BD's MMS business.

56.     BD employs approximately 65,000 associates worldwide (including those who came from CareFusion), including approximately 2,700 associates (including Customer Success Managers) in the MMS business within the United States.

## BD's MMS Products and Trade Secrets

57.     BD treats its pricing information and sales data for the MMS business as trade secret information.

58.     BD also treats the sales, pricing, and future potential sales for its analytics software within the BD Pyxis™ portfolio as trade secret information.

59.     BD treats its competitive intelligence information as to its competitors within the MMS space as trade secret information.

12

60. BD's MMS business also maintains Customer Roadmap files that contain BD's internal future plans aimed at product development and product enhancement.

61. BD's Customer Roadmap files contain BD trade secret information, including but not limited to MMS's solutions to customer challenges.

62. For example, some of BD's MMS Customer Roadmap files contain internal future plans aimed at product development and product enhancement for the latter part of 2020 and into 2021.

63. BD's Customer Roadmap files are updated on a quarterly basis and are shared only with BD customers on a confidential basis.

64. BD treats its BD Roadmap as trade secret information.

65. BD's confidential and proprietary information, including trade secret information, is not generally known outside of BD, and the information contained in those confidential and proprietary files is not readily ascertainable from any source of public information.

66. BD's competitive position rests on the confidentiality of its pricing information, competitive intelligence, and plans to innovate within a highly competitive field.

### BD's Efforts to Protect Its Confidential and Proprietary Information

67. As part of that protection of confidentiality, BD has in place policies, procedures and systems that protect its information from disclosure to others and from use

4817-3697-7620 v.1 003628/01502

by anyone for purposes other than BD's interest. CareFusion's processes were generally consistent with the steps of BD.

68.    BD requires employees to sign, as a condition of their employment, an employee agreement, pursuant to which each BD employee agrees to refrain from disclosing any confidential information to third parties and from using any such information for personal purposes.

69.    BD further requires employees to agree through the employee agreement that they will protect the company's trade secrets, and that they will assign to the company any rights in any inventions or research conducted or developed while at the company.

70.    BD regularly reminds employees of the confidential and proprietary nature of its sales and pricing information by, among other things, requiring employees, including Call, to participate in its annual web-based security and confidentiality training (known internally at BD as "C2C" training).

71.    Further, BD restricts physical access to its headquarters and other facilities by, among other things, requiring visitors to register with security and obtain authorization from BD facilities to enter the facilities and preventing guests to any BD facility, including its facilities in North Carolina, to venture unescorted into such secure areas or to access BD's Confidential Information unless they or their employer had executed appropriate non-disclosure agreements with BD.

14

72.     BD also restricts access to its computer systems, by, among other things, maintaining advanced computer security systems and requiring the entry of a user name and password to gain access to BD's computer system, which includes trade secrets, confidential, and proprietary information.

73.     Further, to the extent that confidential information exists in written paper form, such writings are kept in secured areas with limited access.

74.     Additionally, BD has in place electronic systems that monitor activity such as the downloading of files and information from BD's networks or computers to portable devices or to cloud storage services such as Dropbox or iCloud.

75.     One of those security measures is using a tool known as Data Loss Prevention on the laptops and desktops provided to BD associates, which develops a report that contains the date, time, type of device, and file name, among other fields in which any BD employee electronically transfers information via e-mail or to another storage device, such as an USB removable media.

76.     BD's Information Security Department actively monitors the Data Loss Prevention platform in an effort to determine whether BD employees are downloading or otherwise transferring BD trade secrets or confidential information.

77.     In addition, BD maintains a Code of Conduct that includes the requirement to protect BD information and requiring all associates to participate in training each year.

4817-3697-7620 v.1 003628/01502

78.	The Code of Conduct states: "All directors, officers and employees are responsible for complying with the Code" as a condition of employment with BD.

79.	The Code prohibits BD employees from, among other things, using BD Information Technologies to engage in the unauthorized access to data, using "personal email or file services to conduct BD business[,]" downloading or installing software that is not approved by BD, or using "hostage or storage services that have not been approved by BD Information Security[.]"

80.	BD also maintains a Safe Data Transfer and Storage Policy (and requires associates to complete training on such Policy), that prohibits the transfer of company information.

81.	Further, BD maintains a Trade Secret Policy that states, in pertinent part, that "BD trade secrets may include, but need not be limited to" information relating to "sales such as forecasts, promotional plans, call reports, competitive intelligence, or proprietary customer information (e.g., customer lists, pricing information; customer need's[.]"

82.	The Trade Secret Policy also specifies that trade secrets may include information relating to "finance such as budgets, forecasts, product costs and margins, operations reports, or profit and loss statements."

83.	The Trade Secret Policy states that BD associates should treat all non-public information about BD as a BD trade secret unless otherwise instructed.

4817-3697-7620 v.1 003628/01502

84.    The Trade Secret Policy also states that "every BD associate with access to BD trade secrets shall comply with this Policy."

85.    BD requires its associates to complete training on its Trade Secret Policy.

86.    During the course of Call's employment with BD (and prior to her employment with Omnicell), Call completed more than 50 training courses that discussed, among other things, protecting BD's information.

87.    In addition to all the above reasonable measures to protect BD trade secrets, on January 31, 2018, the BD Executive Leadership Team sent an e-mail communication to all BD associates in the United States that reminded associates of the critical importance of protecting BD's confidential information.  The e-mail attached a PowerPoint slide stating, among other things, the "[u]nauthorized storage and/or transfer of BD information outside of BD – by email, Cloud, USB, paper or any other means – is a violation of BD policy[.]"

### Call's Employment with BD

88.    Prior to Call's employment with Omnicell, Call was employed by BD.

89.    On or about January 4, 2010, Call was hired by Carmel Pharma, Inc. ("Carmel Pharma") as a Sales Specialist/Basic Trainer, and she became a BD employee in August 2011 when BD acquired Carmel Pharma.

90.    Call worked for BD in a sales position until approximately September 2016.

4817-3697-7620 v.1 003628/01502

91.     In October 2016, at the request of Call, she transitioned to a Customer Success Manager for BD's MMS business.

92.     Since approximately October 2016, Call reported to Jessica Poggi ("Poggi").

93.     Call worked primarily out of her home in Greensboro, North Carolina.

94.     On January 8, 2010, Call executed a Carmel Pharma, Inc. Non-Disclosure and Inventions Agreement (the "Employee Agreement").

95.     According to Call's Employee Agreement, Call agreed that "it would harm the Company if any [of] the Company Trade Secrets should become known to its competitors[.]"

96.     According to Call's Employee Agreement, she agreed that she "will not, during or after my employment … disclose to any person (other than in the ordinary conduct of the Company business) any [of] the Company Trade Secrets.  Further, I will not use Company Trade Secrets for the benefit of myself or third parties but, rather, solely to promote the business interests of the Company."

97.     As a Customer Success Manager, Call was involved in confidential internal discussions and meetings around BD MMS Roadmap (innovation), including solutions that are not yet released to the public.

98.     As a result of her positions within BD, Call had access to BD's SalesForce.com platform.

4817-3697-7620 v.1 003628/01502

99.     In connection with Call's employment, BD issued a laptop computer to Call and provided her access to BD's network files.  BD also provided Call with a username and password to access the BD SalesForce.com platform.

100.    Thus, Call had access to confidential BD information contained on the BD SalesForce.com platform, including but not limited to, pricing information, sales opportunities, names and contact information for BD's customers, active customer projects, competitive intelligence, and other confidential customer information.

101.    In or around 2019, Call became dissatisfied with her employment at BD and stated her displeasure to her direct supervisor.

102.    On December 20, 2019, Call informed BD of her intention to resign from BD and stated that her last day with BD would be January 3, 2020.

103.    Call informed BD that she had accepted an offer of employment with Omnicell.

104.    As Call had accepted a position with a competitor, BD, in an effort to protect its confidential information, informed Call that December 20, 2019 would be her last day of employment but that BD would pay Call through January 3, 2020.

105.    As a result, on or about December 20, 2019, BD de-activated Call's access to her BD e-mail account.

4817-3697-7620 v.1 003628/01502

106.    Thereafter, Call contacted Poggi and asked why Call's access to her BD e-mail had been de-activated, and Poggi explained to Call that it was BD's practice to do so, particularly in the event where the employee accepts employment with a competitor.

107.    During this conversation, Poggi reminded Call of her ongoing confidentiality obligations, and Call informed Poggi that she (Call) understood those obligations.

### BD's SalesForce.com Platform

108.    SalesForce.com is an application utilized by BD to provide, among others, customer relationship management services and other applications focused on customer service, sales, and analytics.

109.    In addition to customer relationship management and analytics, BD utilizes the SalesForce.com platform to house BD company confidential sales information so that BD employees with a need-to-know can access such information.

110.    Due to Call's job responsibilities as a Customer Success Manager, BD provided her with access to the BD SalesForce.com platform.

111.    To protect against those without the need to access confidential information on the BD SalesForce.com platform, BD provided Call with a license accompanied by a unique global identification (Teresa_Call@bd.com) and token to authenticate Call for access to the SalesForce.com platform.

4817-3697-7620 v.1 003628/01502

**Call's Employment with Omnicell and Misappropriation of BD's Trade Secrets**

112.     Following her voluntary resignation from BD, Call commenced employment with Omnicell in January 2020 as a Customer Success Executive.

113.     Upon information and belief, during her employment with Omnicell, Call primarily worked from her home in Greensboro, North Carolina.

114.     As an Omnicell employee, Call was an agent of Omnicell.

115.     As an employee of Omnicell, Call had an incentive to use and disclose BD's confidential and trade secret information to the advantage of Omnicell.

116.     Unbeknownst to BD, following her resignation from BD, Call, while employed by Omnicell, engaged in a pattern of accessing the BD SalesForce.com platform and took from BD files containing BD trade secret information.

117.     Between January 22, 2020 and July 24, 2020, Call, *while employed by Omnicell*, accessed BD's platform approximately 18 times and downloaded approximately 120 BD files from the BD SalesForce.com platform.

118.     On July 28, 2020, BD learned that Call had been accessing the BD SalesForce.com platform after her BD employment ended when a BD associate logged into the SalesForce.com platform and noticed that Call had last accessed a particular file in July 2020.

119.     BD immediately began an investigation to determine whether Call had been accessing BD's files after she had resigned and left BD's employ.

21

4817-3697-7620 v.1 003628/01502

120.    BD's investigation revealed that, while employed at Omnicell, Call accessed and downloaded BD information from the BD SalesForce.com platform.

121.    The investigation revealed that Call had secretly, without authorization and in violation of company policy and her legal obligations, accessed the BD SalesForce.com platform on at least 18 different post-employment occasions and downloaded approximately 120 BD files that represented trade secrets of BD and other confidential and proprietary information and property.

122.    The BD SalesForce.com platform records each time that an individual downloads a BD file, and BD's investigation revealed that Call had downloaded BD files from the platform and that such downloading activity occurred after her resignation from BD, and while she was employed by Omnicell.

123.    Specifically, BD learned that, while employed by Omnicell, Call downloaded BD files related to BD's: (a) confidential pricing information, including customer lists; (b) confidential competitive intelligence information regarding BD's competitors; and (c) BD's plans for innovation regarding its Medication Management Solutions products.

124.    BD also learned that, while employed by Omnicell, Call downloaded more than a dozen BD Launch Content Packs, that contain confidential and trade secret information respecting pricing and competitive intelligence.  At least five of the Launch

4817-3697-7620 v.1 003628/01502

Content Packs that Ms. Call downloaded were created by BD *after* Ms. Call had left BD and *during her employment at Omnicell*.

125. The goal of the Launch Content Pack is to: (a) gather critical information needed to support creation and development of sales tools and Request For Proposals ("RFPs"); (b) ensure that messaging is consistent with, and complementary to, existing MMS messaging; (c) ensure messaging is concise so as to allow BD sales associates to understand and effectively articulate the new product value to customers; and (d) provide a source for new product information.  BD's Launch Content Packs are for internal BD use only and not distributed to third parties, including not being distributed to customers.

126. BD's Launch Content Packs contain BD trade secret information relating to BD's pricing and sales information, and competitive intelligence.

127. In addition, BD learned that, while employed by Omnicell, Call downloaded BD trade secret files relating to BD's pricing information, including pricing information for specific BD products.

128. BD also learned that, while employed by Omnicell, Call downloaded BD Customer Roadmap files that contain BD's internal plans aimed at product development and product enhancement for the latter part of 2020 and into 2021.  For example, some of BD's Customer Roadmap files for the MMS business in 2020 contain internal future plans aimed at product development and product enhancement for the latter part of calendar year

4817-3697-7620 v.1 003628/01502

2020 and into 2021. Such files contain BD trade secret information and are shared only with BD customers on a confidential basis.

129. BD also learned that, while employed by Omnicell, Call downloaded from BD Competitive Battle Cards containing BD trade secret information respecting BD's competitors in the MMS space.

130. In addition to the above-described trade secret information, while employed by Omnicell, Call also downloaded BD's internal plans to address customer needs during the COVID-19 pandemic. BD's internal business plans to address customer needs during the COVID-19 pandemic are BD trade secrets.

131. The information taken by Call and possessed by Omnicell would provide a roadmap to any competitor, such as Omnicell, to be able to outbid BD on potential sales in the marketplace and place Omnicell in a competitive advantage by knowing BD's pricing information, customer contact information and sales opportunities, competitive intelligence, and BD's future product plans in the MMS space.

132. Upon learning of Call's improper access to BD information and theft of BD trade secrets, BD immediately contacted BD's Information Technology (IT) department to instruct the immediate deactivation of Call's access to the site. Thus, Call's access to the BD platform was shut down on July 28, 2020, just hours after BD learned of Call's illegal and tortious post-employment conduct.

4817-3697-7620 v.1 003628/01502

133.   BD's investigation verified that the downloading activity was conducted through the account name Teresa_Call@bd.com and that 16 of the 18 times Call accessed the BD SalesForce.com platform was from an IP address located in North Carolina.

134.   Specifically, the investigation revealed the following activity by the account name Teresa_Call@bd.com, all of which occurred while Call was an employee of Omnicell:

   a.   On January 22, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from an unknown IP address and from an unknown location;

   b.   On January 30, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.143, which is located in Greensboro, North Carolina;

   c.   On February 4, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 174.235.4.182, which is located in Houston, Texas;

   d.   On February 11, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.143, which is located in Greensboro, North Carolina;

4817-3697-7620 v.1 003628/01502

e.  On February 28, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.143, which is located in Greensboro, North Carolina;

f.  On March 23, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.143, which is located in Greensboro, North Carolina;

g.  On April 8, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.143, which is located in Greensboro, North Carolina;

h.  On April 14, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.143, which is located in Greensboro, North Carolina;

i.  On April 17, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 174.247.15.140, which is located in Charlotte, North Carolina;

j.  On April 27, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.143, which is located in Greensboro, North Carolina;

4817-3697-7620 v.1 003628/01502

k. On May 7, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.143, which is located in Greensboro, North Carolina;

l. On May 15, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.143, which is located in Greensboro, North Carolina;

m. On May 18, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.143, which is located in Greensboro, North Carolina;

n. On May 21, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.143, which is located in Greensboro, North Carolina;

o. On May 26, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.143, which is located in Greensboro, North Carolina;

p. On June 15, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.143, which is located in Greensboro, North Carolina;

4817-3697-7620 v.1 003628/01502

q.   On July 15, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.146, which is located in Greensboro, North Carolina; and

r.   On July 24, 2020, Teresa_Call@bd.com accessed the BD SalesForce.com platform from IP address 45.36.15.146, which is located in Greensboro, North Carolina.

135.   Most of Call's downloading of BD files from the BD SalesForce.com platform occurred from an IP address located in Greensboro, North Carolina, where Ms. Call resides.

136.   The investigation also revealed that the improper downloading activity all occurred *after Call's resignation from BD and during her employment with Omnicell*.

137.   Over a four-day period from April 14, 2020 through April 17, 2020, Call, as an agent of Omnicell, accessed and downloaded approximately 45 BD files from the platform.

138.   Additionally, on July 24, 2020, Call, as an agent of Omnicell, accessed and downloaded an additional 14 BD files from the platform.

139.   As specifically identified in Paragraphs 141 and 147-159 below, many of the accessed or downloaded files contain BD's confidential and trade secret information.

28

140.    Many of the files containing BD trade secret information that Ms. Call downloaded were created by BD *after* Ms. Call had left BD and during her employment at Omnicell.

141.    As described in the below subparagraphs, the trade secrets acquired by Omnicell through Call's actions as Omnicell's agent in North Carolina, include: (i) confidential pricing information, including customer lists; (ii) confidential competitive intelligence information regarding BD's competitors; and (iii) BD's plans for innovation regarding its MMS products:

     a.    On or around January 22, 2020, Call, as an agent of Omnicell, downloaded from the BD SalesForce.com platform the following files containing BD trade secrets:

          1.    BD HealthSight Diversion Management – Launch Content Pack (LCP): This file contains detailed confidential pricing information for BD's Healthsight Diversion Management product;

          2.    BD HealthSight Diversion Management Solution – Internal Use Only FAQs: This file contains BD trade secret information regarding the processes and analytical data respecting the BD HealthSight™.    The file is clearly marked as "FOR INTERNAL USE ONLY[;]"

4817-3697-7620 v.1 003628/01502

3. Diversion Competitive Battle Cards.pdf: This file contains an internal and confidential competitive analysis of certain competitors in the medication management solutions space, including the strengths and weaknesses of each product vis-à-vis the BD product. The file specifically includes a competitive analysis of Omnicell's products. The file, dated January 2020, was downloaded by Call less than a month after she resigned from BD. The file is marked "Confidential-For Internal Use Only[;]"

4. Non-Acute ES License Pricing – Launch Content Pack (LCP).pdf: This file contains detailed confidential pricing information for the BD Pyxis™ for small hospital market segments. The file contains a detailed analysis with reasons for pricing changes and BD's price quoting structure. The file is clearly marked "FOR INTERNAL USE ONLY[;]"

5. MMS Customer Roadmap: This file, titled "Customer Roadmap," contains specific confidential information about BD's innovation plans for products within its MMS business for the fourth quarter of 2020 and first quarter of 2021. The file does not simply provide a general roadmap for BD's MMS

30

business, but it also provides BD's specific future plans with respect to: (i) BD HealthSight™; (ii) BD Pyxis™; (iii) BD Pyxis™ Logistics; (iv) BD Pyxis™ IV Prep; (v) BD Pyxis™ CII Safe; and (vi) BD Pyxis™ Supply.  The file is dated January 2020, the same month Call commenced employment with Omnicell.  Call would access and download a later version of the document in May 2020; and

6. IMME Schedule at a Glance: This file contains Integrated Medication Management Experience ("IMME") with the identities of specific BD customer contacts.  BD customer information is a BD trade secret, and Call would later download additional IMME files with other customer contact information.

b. On or around January 30, 2020, Call, as an agent of Omnicell, downloaded from the BD SalesForce.com platform the following files containing BD trade secrets:

1. Allscripts & iatricSystems – Launch Content Pack (LCP): This file contains detailed confidential pricing information and competitive intelligence for the BD Alaris™ EMR Interoperability with Allscripts® and iatricSystems®.  BD

31

created this Launch Content Pack on December 13, 2019 (about one week before Call announced her resignation from BD), and she downloaded it on January 30, 2020 (after she commenced employment with Omnicell); and

2. IMME Schedule at a Glance: This is the second IMME file downloaded by Call that contains the identities of specific BD customer contacts. BD customer information is a BD trade secret, and Call would later download an additional IMME file with other customer contact information.

c. On or around February 28, 2020, Call, as an agent of Omnicell, downloaded from the BD SalesForce.com platform the following files containing BD trade secrets:

1. BD Pyxis Track and Deliver – Launch Content Pack (LCP): This file contains detailed confidential pricing information for the software, hardware, and accessories related to the BD Pyxis™ Track and Deliver. The file also contains confidential competitive analysis information. The file is clearly marked "FOR INTERNAL USE ONLY[;]"

2. BD HealthSight Data Manager – Launch Content Pack (LCP): This file contains BD trade secret information, including

32

4817-3697-7620 v.1 003628/01502

diagrams on how the analytics work, technical data regarding the product, and competitive intelligence regarding the competitive product marketed by Omnicell. The file is clearly marked as "FOR INTERNAL USE ONLY" and is dated February 26, 2020. Thus, the document was not created until approximately two months after Call resigned from BD, but she accessed and downloaded it only two days after BD created it; and

3. IMME Schedule at a Glance: This is the third IMME file downloaded by Call that contains the identities of specific BD customer contacts. BD customer information is a BD trade secret.

d. On or around March 23, 2020, Call, as an agent of Omnicell, downloaded from the BD SalesForce.com platform the following files containing BD trade secrets:

1. Alaris2020 – INTERNAL USE ONLY – Internal FAQs for Customer Notification dated February 4, 2020: This file contains BD trade secret information because it contains quality control information and internal strategy with respect to BD's Alaris™ System. The file is clearly marked as

33

"CONFIDENTIAL – FOR INTERNAL USE ONLY" and is dated February 4, 2020. Thus, the document was not created until over one month after Call resigned from BD.

e.  On or around April 8, 2020, Call, as an agent of Omnicell, downloaded from the BD SalesForce.com platform the following files containing BD trade secrets:

     1.  BD HealthSight Diversion Management Competitive Deep Dive.pptx: This file contains BD trade secret information because it contains a detailed analysis of the BD HealthSight™ and a competitive analysis of the Omnicell competitive product. The file also contains pricing strategies and future BD strategies for marketing the BD HealthSight™. The file is clearly marked on each page as "*Confidential-For Internal Use Only*" and is dated April 1, 2020. Thus, the document was not created until approximately three months after Call resigned from BD.

f.  On or around April 14, 2020, Call, as an agent of Omnicell, downloaded from the BD SalesForce.com platform the following files containing BD trade secrets:

34

1. BD HealthSight Diversion Management Competitive Deep Dive(1).pptx: This file contains BD trade secret information because it contains a detailed analysis of the BD HealthSight™ and a competitive analysis of the Omnicell competitive product. The file also contains pricing strategies and future BD strategies for marketing the BD HealthSight™. The file is clearly marked on each page as "*Confidential-For Internal Use Only*" and is dated April 1, 2020. The April 14, 2020 download is the second time Call downloaded a version of this PowerPoint containing BD's confidential competitive analysis of the Omnicell product (she previously downloaded a different version of the file approximately six days earlier on April 6, 2020);

2. BD HealthSight Inventory Optimization (IO) Analytics – Launch Content Pack (LCP).pdf: This file contains BD trade secrets respecting BD HealthSight™ pricing and discount information, including specific monthly pricing for non-acute sites. The file also contains BD trade secret information regarding target customers and contracting and competitive analysis information. The file is clearly marked on each page

35

4817-3697-7620 v.1 003628/01502

as "FOR INTERNAL USE ONLY" and is dated February 27, 2020 (approximately two months after Call resigned from BD);

3. BD HealthSight Clinical Advisor Powered by Medmined – Launch Content Pack (LCP): This file contains BD trade secret pricing information and competitive intelligence information; and

4. BD HealthSight Viewer – Launch Content Pack (LCP): This file contains BD trade secrets respecting BD HealthSight™ pricing information;

g. On or around April 17, 2020, Call, as an agent of Omnicell, downloaded from the BD SalesForce.com platform the following files containing BD trade secrets:

1. COVID-19 Internal Pyxis Emergency Response Program.pdf: This file contains confidential internal strategies to support customer needs in response to COVID-19, including internal strategies for the contracting process, pricing information and pricing strategies for the BD Pyxis™ MedStation. The file is marked as "INTERNAL USE ONLY" and dated April 2020, four months after Call left BD. Such information is provided

36

outside of BD only to customers and is subject to a Non-Disclosure Agreement with the BD customer;

2. COVID-19 External Dispensing Emergency Response Program: This file contains confidential internal strategies to support customer needs in response to COVID-19, including BD's strategies for assisting its customers in responding to the COVID-19 pandemic. Such information is provided outside of BD only to customers and is subject to a Non-Disclosure Agreement with the BD customer;

3. BD Pyxis CII Safe v8.1.1 – Launch Content Pack (LCP).pdf: This file contains confidential pricing information and discount information relating to the BD Pyxis CII Safe™ System. The file also contains confidential competitive analysis information, including a competitive analysis of Omnicell's product. The file is clearly marked "For Internal Use Only";

4. BD Pyxis Logistics v1.2 – Launch Content Pack (LCP).pdf: This file contains confidential pricing information and budgetary pricing for the BD Pyxis™ Logistics. The file also contains confidential competitive analysis information,

37

including a competitive analysis of Omnicell's product. The file is clearly marked "FOR INTERNAL USE ONLY[;]"

5. BD Pyxis CII Safe Sales Messaging Presentation (1).pptx: This file contains internal marketing information to be used by BD sales personnel in connection with the BD Pyxis CII Safe™ System. The file is clearly marked as "CONFIDENTIAL INFORMATION – for internal use only[;]"

6. BD Pyxis IV Prep Pricing Overview.pdf: This file contains confidential pricing information for the BD Pyxis™ IV Prep for 2020. Specifically, the file contains detailed pricing information for: (i) the various hardware components; (ii) software subscription packages; and (iii) implementation services. The file is marked "Confidential-For Internal Use Only[.]" Call later downloaded an updated version of the file on July 24, 2020; and

7. BD Remote Assist – Launch Content Pack (LCP).pdf: This file contains confidential pricing information for the BD Pyxis™ Remote Assist. The file also contains confidential competitive analysis information, including a competitive analysis of

4817-3697-7620 v.1 003628/01502

Omnicell's product. The file is clearly marked "FOR INTERNAL USE ONLY[.]"

h. On or around April 27, 2020, Call, as an agent of Omnicell, downloaded from the BD SalesForce.com platform the following files containing BD trade secrets:

1. BD Pyxis ES Refrigerator – Remote Manager Temp Monitor Cost Comparison Overview.pdf: This file contains confidential pricing information for the purchase, lease, and technical support for the BD Pyxis™ ES Refrigerator for 2020. The file is clearly marked "For Internal Use Only" and was downloaded by Call approximately four months after she resigned from BD; and

2. Pricing Program- BD Pyxis ES Microsoft SQL Server 2016 – 382.pdf: This file contains confidential pricing information for the BD Pyxis™ ES. Specifically, it contains promotional pricing for the BD Pyxis™ ES that remains valid through at least February 1, 2021. The file is marked "BD Company Confidential – For Internal Use Only[.]"

39

i.   On or around May 7, 2020, Call, as an agent of Omnicell, downloaded from the BD SalesForce.com platform the following files containing BD trade secrets:

1. BD HealthSight Clinical Advisor Powered by Medmined – Launch Content Pack (LCP): This file contains BD trade secret pricing information and competitive intelligence information. Call downloaded a similar version of the file on April 14, 2020.

j.   On or around May 18, 2020, Call, as an agent of Omnicell, downloaded from the BD SalesForce.com platform the following files containing BD trade secrets:

1. MMS Customer Roadmap (2).pdf: This file, titled "Customer Roadmap," contains specific confidential information about BD's innovation plans in the MMS business for the remainder of 2020 and 2021. The file does not simply provide a general roadmap for BD's MMS business, but it also provides BD's future plans with respect to the following products: (i) BD HealthSight™; (ii) BD Pyxis™; (iii) BD Pyxis™ Logistics; (iv) BD Pyxis™ IV Prep; (v) BD Pyxis™ CIISafe; and (vi) BD Pyxis™ Supply. The file is dated May 2020, and it represents

40

the second time Call downloaded the file (she downloaded an earlier version of the file in January 2020).

k.  On or around May 26, 2020, Call, as an agent of Omnicell, downloaded from the BD SalesForce.com platform the following files containing BD trade secrets:

1.  BD Pyxis IV Prep Competitive Battlecards (1).pdf: This file is an internal BD presentation that contains a confidential competitive analysis of the competitive products in the IV prep market, including the strengths and weaknesses of each product vis-à-vis the BD Pyxis™ IV Prep.  It specifically includes a competitive analysis of Omnicell's product.  The file, dated May 21, 2020 (approximately five months after Call left BD) is marked "*Confidential-For Internal Use Only*[.]"

l.  On or around June 15, 2020, Call, as an agent of Omnicell, downloaded from the BD SalesForce.com platform the following files containing BD trade secrets:

1.  BD Pyxis ES Enterprise Interoperability with Epic – Launch Content Pack (LCP).pdf: This file contains confidential pricing information and competitive analysis information, including a competitive analysis of Omnicell's product, for the BD

41

4817-3697-7620 v.1 003628/01502

Pyxis™ Enterprise Server. The file is clearly marked "For Internal Use Only" and is dated February 2020, approximately two months after Call resigned from BD.

m. On or around July 15, 2020, Call, as an agent of Omnicell, downloaded from the BD SalesForce.com platform the following files containing BD trade secrets:

1. BD Pyxis IV Prep 2.49 – Launch Content Pack (LCP) (1).pdf: This file contains confidential pricing information and competitive analysis information, including a competitive analysis of Omnicell's product, for the BD Pyxis™ IV Prep. The file is clearly marked "FOR INTERNAL USE ONLY" and is dated June 2020, approximately six months after Call resigned from BD; and

2. BD Pyxis Logistics New Pricing FAQs: This file contains confidential pricing information respecting the BD Pyxis™ Logistics product.

n. On or around July 24, 2020, Call, as an agent of Omnicell, downloaded from the BD SalesForce.com platform the following files containing BD trade secrets:

4817-3697-7620 v.1 003628/01502

1. BD HealthSight Diversion Management Core - Launch Content Pack (LCP): This file contains significant BD trade secret information, including technical data and specifications for the BD HealthSight™; specific pricing and contracting information for the BD HealthSight™; and a detailed competitive analysis of competitive products, including Omnicell's competitive products as well as the competitive products of other companies. The file is clearly marked as "FOR INTERNAL USE ONLY" and is dated July 22, 2020. Thus, the document was not created until approximately seven months after Call resigned from BD, but she accessed and downloaded it only two days after BD created it;

2. BD Pyxis ES Enterprise Interoperability with Cerner – Launch Content Pack (LCP).pdf: This file contains confidential pricing information and competitive analysis information, including a competitive analysis of Omnicell's product, for the BD Pyxis™ Enterprise Server. The file is clearly marked "For Internal Use Only" and is dated July 2020, approximately seven months after Call resigned from BD;

43

3. Pricing Promo- BD Pyxis Supply Microsoft WIN10 Upgrade – 388.pdf: This file contains confidential pricing information for the BD Pyxis™. Specifically, it contains promotional pricing and discount information for the BD Pyxis™ that remains valid through at least February 1, 2021. The file is marked "BD Company Confidential – For Internal Use Only";

4. BD Pyxis IV Prep Pricing Overview (1).pdf: This file contains confidential pricing information for the BD Pyxis™ IV Prep for 2020. Specifically, the file contains detailed pricing information for: (i) the various hardware components; (ii) software subscription packages; and (iii) implementation services. The file is marked "Confidential-For Internal Use Only[.]" Call downloaded one version of this file on April 17, 2020, and she downloaded an updated version of the file on July 24, 2020;

5. Pricing Program: AlO5 PAS Upgrade – 375: This file contains confidential BD pricing information; and

6. Payment Promo: Purchase – 391: This file contains confidential BD pricing information.

4817-3697-7620 v.1 003628/01502

142.    The information referenced above in paragraph 141(a)-(n) was possessed by Omnicell.

143.    The information referenced above in paragraph 141(a)-(n) would provide a competitor, such as Omnicell, the ability to know BD's pricing structure and outbid BD on sales pitches.

144.    While BD has obtained back from Call the BD files that were stored on her personal electronic devices and on her personal e-mail and cloud accounts, Omnicell continues to have in its possession, custody, or control much of the information that it acquired through Call.

145.    Despite BD's efforts to obtain its information back from Omnicell, Omnicell has stated it is only willing to return BD's information if BD releases Omnicell from any and all claims that BD has against Omnicell.  As such, Omnicell has admitted acquisition and possession of BD's information but is only willing to return it to BD if BD agrees to provide Omnicell with a release before the return of the information and without allowing, and indeed while blocking BD from learning, if, when and how others at Omnicell received, reviewed, relied on, or used such information.

146.    Omnicell acquired BD's confidential information and trade secrets, benefitted from access to such confidential information and trade secrets, and now seeks to further benefit by tying the return of the information to BD on the condition that BD releases Omnicell from any claims BD has against Omnicell.

45

## Omnicell's Acquisition, Possession and Use of BD's Trade Secrets and Confidential Information

147.     Upon information and belief, Call, while employed by Omnicell, transferred BD's trade secret information to Omnicell.

148.     Upon information and belief, as a result of Call's transfer of BD trade secret information to Omnicell, Omnicell (including many of its employees) acquired and currently possesses BD's trade secret and confidential information.

149.     Upon information and belief, as an employee of Omnicell in North Carolina, Call e-mailed to her Omnicell e-mail account several files containing BD trade secret and confidential information, and thereafter, Call: (i) shared such files, or the information therein, with others at Omnicell; (ii) used such files, or the information therein, in carrying out her duties for Omnicell; and/or (iii) made it inevitable that she or others at Omnicell with whom she shared such files or information would use such files or information in the course of carrying out duties for Omnicell.

150.     Upon information and belief, as a result of Call's transferring of BD files and information, Omnicell acquired and now possesses BD's trade secret and confidential information.

151.     Upon information and belief, while employed by Omnicell in North Carolina, Call stored multiple BD files to Omnicell's cloud storage account. Upon information and belief, the items that Call uploaded to Omnicell's Cloud account include,

4817-3697-7620 v.1 003628/01502

but are not limited to, BD's technology files, pricing information for BD products, Launch Content Packs, confidential competitive information, and other confidential business information relating to BD's products and pricing information.

152.    Upon information and belief, as a result of the uploading of BD trade secret and confidential information to Omnicell's cloud account, Omnicell acquired, among other things, BD's: (i) confidential pricing information; confidential plans regarding its response to the COVID-19 pandemic; (iii) confidential competitive information; and (iv) BD's Launch Content Packs for various of its products.

153.    Upon information and belief, any Omnicell employee with access to Omnicell's cloud storage account had the ability to access, view, use, and/or disseminate the BD files and information.

154.    BD's Launch Content Packs contain BD trade secret information—namely pricing and confidential competitive intelligence information—respecting technology about to be launched for various BD products.

155.    Upon information and belief, during her employment at Omnicell, Call also e-mailed to others at Omnicell BD trade secret and confidential information.  The information acquired by Omnicell would place Omnicell at a competitive advantage over its competitors, especially BD.

4817-3697-7620 v.1 003628/01502

156. Upon information and belief, the BD files and information that Call transferred via e-mail include, but are not limited to Launch Content Packs and confidential pricing information for the BD Pyxis product line.

157. Upon information and belief, Omnicell, through several of its employees, acquired BD's trade secret and confidential information.

158. Upon information and belief, Omnicell's acquisition and possession of BD information includes but is not limited to: (i) BD's Launch Content Packs, which contain information regarding not-yet-released enhancements to BD products; (ii) confidential and trade secret information relating to BD pricing; and (iii) BD's confidential competitive information.

159. Upon information and belief, in addition to BD's Launch Content Packs, Omnicell acquired and currently possesses BD's confidential future plans within its MMS platform, as well as technology and analytics and financial information relating to BD's MMS platform.

160. BD has suffered harm as a result of Omnicell's misappropriation and use of BD's trade secret and confidential and proprietary information resulting from BD's loss of sales during the 2020 calendar year, including but not limited to the loss of several potential sales contracts to Omnicell in 2020.

48

161.    Indeed, from the period starting January 2020, BD has lost out to Omnicell on several contract bids to both customers and potential customers, causing BD loss in excess of a hundred million dollars.

162.    In connection with one of the bids that BD lost to Omnicell in 2020, BD was informed by the customer that the pricing proposed by Omnicell was remarkably similar to BD's pricing.

163.    The use by Omnicell of BD's confidential information will make it impossible for BD to compete in the marketplace with the same competitive advantage as prior to Call's misappropriation of BD's trade secrets.

## FIRST CLAIM FOR RELIEF

**(Misappropriation/Threatened Misappropriation of Trade Secrets under the Defend Trade Secrets Act of 2016)**
**(Against Omnicell)**

164.    BD repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

165.    BD owned and possessed certain confidential, proprietary and trade secret information, as alleged above.  The BD trade secrets are the products of valuable research and development, time and effort, and investment by BD.

166.    This confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

4817-3697-7620 v.1 003628/01502

167. BD has taken reasonable measures to keep such information secret and confidential, including but not limited to requiring employees to sign Employee Agreements, implementing employment policies aimed at protecting confidential information (including but not limited to the BD Trade Secret Policy), and reminding employees of their confidentiality obligations when employees log into the BD network.

168. This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

169. In violation of BD's rights, Omnicell misappropriated the confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein, within the meaning of the DTSA, 18 U.S.C. 1836, by acquiring, using and/or disclosing the BD Trade Secrets and continuing to possess, use, and/or disclose them for its own economic benefit.

170. The trade secret information acquired, used, and/or disclosed by Omnicell includes—but is not limited to—each file identified in paragraphs 141 and 147-159, above.

171. Omnicell's misappropriation of the confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

172. Upon information and belief, Omnicell misappropriated BD's trade secrets by improperly acquiring BD's trade secrets through and from Call over the period of time

50

in which Call disclosed them, even though Omnicell knew or should have known that Call's disclosure was in violation of Call's duties of secrecy and to return BD property to BD.

173.     Upon information and belief, Omnicell further misappropriated BD's trade secrets by improperly using BD's trade secrets to market, sell, or upgrade its medication and supply management products, for Omnicell's benefit and to the detriment of BD.

174.     Upon information and belief, Omnicell currently possesses BD's trade secrets that it improperly acquired.

175.     As a direct and proximate result of Omnicell's misappropriation, BD has suffered damage within the meaning of § 1836(b)(3)(B)(i)(I) in an amount as yet unknown and, if Omnicell's conduct is not stopped, BD will continue to suffer irreparable injury and significant damages, in an amount to be proven at trial.

176.     In addition, as a direct and proximate result of Omnicell's misappropriation, Omnicell has been unjustly enriched as a result of its misappropriation of BD's trade secrets within the meaning of § 1836(b)(3)(B)(i)(II) in an amount as yet unknown.

## SECOND CLAIM FOR RELIEF

**(Misappropriation of Trade Secrets Under the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152 *et seq.*)**
**(Against Omnicell)**

177.     BD repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

51

178.  BD owned and possessed certain confidential, proprietary and trade secret information, as alleged above.  The BD trade secrets are the products of valuable research and development, time and effort, and investment by BD.

179.  This confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

180.  BD has taken reasonable measures to keep such information secret and confidential, including but not limited to requiring employees to sign Employee Agreements, implementing employment policies aimed at protecting confidential information (including but not limited to the BD Trade Secret Policy), and reminding employees of their confidentiality obligations when employees log into the BD network.

181.  This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

182.  In violation of BD's rights, Omnicell misappropriated the confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein, by obtaining, using and disclosing BD's trade secrets and continuing to use and disclose them for their own economic benefit.

183.  In violation of BD's rights, Omnicell has misappropriated BD pricing

4817-3697-7620 v.1 003628/01502

information for BD's MMS business.

184. In violation of BD's rights, Omnicell has misappropriated BD customer contact information.

185. In violation of BD's rights, Omnicell has misappropriated BD competitive intelligence information for BD's MMS business.

186. Omnicell's misappropriation of the confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive and has violated N.C. Gen. Stat. § 66-152 *et seq*.

187. If Omnicell's conduct is not remedied, Omnicell will continue to misappropriate, disclose, and use for its own benefit and to BD's detriment, BD's trade secret information.

188. Omnicell misappropriated BD's trade secrets by improperly acquiring BD's trade secrets from Call over the period of time in which Call disclosed them, even though Omnicell knew or should have known that Call's disclosure was in violation of Call's duties of secrecy and to return BD property to BD.

189. Upon information and belief, Omnicell further misappropriated BD's trade secrets by improperly using BD's trade secrets to market, sell, or upgrade its medication and supply management products, for Omnicell's benefit and to the detriment of BD.

190. As the direct and proximate result of Omnicell's conduct as aforesaid, BD has suffered and, if Omnicell's conduct is not stopped, BD will continue to suffer,

4817-3697-7620 v.1 003628/01502

irreparable injury and significant damages, in an amount to be proven at trial.

191. As a direct and proximate result of Omnicell's misappropriation, BD has suffered damage in an amount as yet unknown and, if Omnicell's conduct is not stopped, BD will continue to suffer irreparable injury and significant damages, in an amount to be proven at trial.

192. In addition, as a direct and proximate result of Omnicell's misappropriation, Omnicell has been unjustly enriched as a result of its misappropriation of BD's trade secrets in an amount as yet unknown.

## THIRD CLAIM FOR RELIEF

**(Unfair Competition)**
**(Against Omnicell)**

193. BD repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

194. Omnicell engaged in unfair and unscrupulous commercial tactics—as detailed hereinabove—calculated to prevent BD from providing competitive pricing for its products and services, all to the disadvantage of patients, healthcare providers, as well as to BD.

195. By wrongfully acquiring and using BD confidential and trade secret information, Omnicell has engaged in unfair competition with BD.

196. The unfair and unscrupulous commercial tactics by Omnicell constitutes unfair competition, and Omnicell's actions proximately injured and damaged BD since BD

54

has suffered, and will continue to suffer, substantial monetary damages, in an amount to be determined at trial, as well as monetary damages that cannot be calculated, and irreparable harm to its reputation and goodwill. Such conduct entitles BD to a judgment of compensatory damages together with consequential and incidental damages for lost business and profits, pre- and post-judgment interest and costs as provided by law, as well as punitive damages for Omnicell's willful, wanton, and malicious conduct, which was undertaken in order to punish and inflict monetary harm on BD.

## **FOURTH CLAIM FOR RELIEF**

**(Violation of N.C. Gen. Stat. § 75.1.1 *et seq.*)**
**(Against Omnicell)**

197.   BD repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

198.   Omnicell has engaged in acts, omissions and practices, as described above and otherwise, that were unfair and deceptive and that offend established public policy. The acts, omissions and practices of Omnicell are unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to competition and specifically injurious to BD.

199.   Omnicell's acts, omissions and practices, as alleged above and otherwise, constitute unfair or deceptive acts or practices in or affecting commerce in violation of N.C. Gen. Stat. § 75-1.1 et seq.

200.   As a result of Omnicell's unfair and deceptive acts and practices, BD has been damaged in this State and is entitled to recover its damages. Pursuant to N.C. Gen.

4817-3697-7620 v.1 003628/01502

Stat. §§ 75-16 and 75-16.1 and other applicable law, BD is entitled to have such damages trebled and to an award of costs and reasonable attorney's fees.

201.    As a proximate result of Omnicell's unfair and deceptive acts and practices and of Omnicell's other wrongful conduct described otherwise herein, BD is also entitled to an accounting of Omnicell's improper gains from its wrongful conduct and to an Order requiring disgorgement of such gains obtained at the expense of BD and its rights.

## FIFTH CLAIM FOR RELIEF

**(Tortious Interference with Prospective Business Relations and Economic Advantage)**
**(Against Omnicell)**

202.    BD repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

203.    Omnicell has wrongfully and tortiously interfered, and upon information and belief are continuing to wrongfully and tortiously interfere with the prospective economic advantage, and prospective business relationships of BD as well, upon information and belief, with BD's prospective contracts with customers or potential customers. Prior to Omnicell's interference, there was a reasonable probability that BD would have entered into such new business relationships. Omnicell so acted with a conscious desire to prevent such relationships from occurring and/or knew that their interference was certain or substantially certain to cause such relationships not to be consummated.

56

4817-3697-7620 v.1 003628/01502

204.    In taking such actions, Omnicell has acted without justification or legitimate business purpose and with the malicious intent to injure BD. BD has been and will be proximately harmed by the willful, wanton, malicious and egregious tortious interference by Omnicell as described above.  Consequently, BD is entitled to recover from Omnicell compensatory damages together with lost profits, punitive damages and pre- and post-judgment interest and costs.

**WHEREFORE**, BD respectfully prays the Court for judgment against Omnicell providing for:

1.    An Order requiring that Omnicell's computer network and e-mail system be subject to a forensic analysis for review of any and all BD files or BD information on Omnicell's computer network;

2.    An Order requiring that Omnicell preserve its cloude storage account and that Omnicell be ordered to allow for a forensic review of the cloud storage account;

3.    Compensatory, consequential and incidental damages;

4.    Punitive or exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C), N.C. Gen. Stat. §§ 66-154(c), N.C. Gen. Stat. § 1-539.2A, and/or other applicable law;

5.    Reasonable attorney's fees and costs of suit pursuant to 18 U.S.C. § 1836(b), N.C. Gen. Stat. § 66-154(d), N.C. Gen. Stat. § 1-539.2A, and/or other applicable law;

4817-3697-7620 v.1 003628/01502

6.      For the immediate return of all BD property taken, including any and all documents or other means of information storage containing BD property and confidential information;

7.      Pre-judgment and post-judgment interest;

8.      For a trial by jury on all issues so triable; and

9.      Such other and further relief as this Court deems equitable and just.

This the 21st day of December, 2020.


/s/ Mark A. Stafford
Mark A. Stafford, NC Bar No. 16835
NELSON MULLINS RILEY & SCARBOROUGH LLP
380 Knollwood Street, Suite 530
Winston-Salem, NC  27103
Phone: 336.774.3333 / Fax: 336.774.3379
E-mail: mark.stafford@nelsonmullins.com

James P. Flynn, Esq. (*Pro Hac Vice to be submitted*)
Epstein Becker & Green, P.C.
One Gateway Center, 13th Floor
Newark, NJ  07102
Phone: 973.642.1900 / Fax 973.642.0099
E-mail: jflynn@ebglaw.com

Daniel R. Levy, Esq. (*Pro Hac Vice to be submitted*)
Epstein Becker & Green, P.C.
One Gateway Center, 13th Floor
Newark, NJ  07102
Phone: 973.642.1900 / Fax 973.642.0099
E-mail: dlevy@ebglaw.com

*Attorneys for Plaintiff*

58

4817-3697-7620 v.1 003628/01502